# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIC TILL, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) CIVIL ACTION |
| v. | ) NO. 09-cv-1795 |
| | ) |
| SPRINT SOLUTIONS, INC., et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

**RUFE, J.**                                                                                                                      **March 30, 2010**

Plaintiffs Eric Till and Till Communications, Inc. bring this action against Defendants Sprint Solutions, Inc. and Sprint Nextel, Inc. ("Sprint"), alleging intentional interference with existing and prospective contractual relations, breach of contract, negligent misrepresentation, libel, and alternatively, intentional misrepresentation. Now before the Court is Defendants' Motion to Dismiss the Amended Complaint.[1] For the reasons set forth below, the Motion will be granted.

## I.     FACTUAL AND PROCEDURAL HISTORY

On October 1, 2005, Plaintiffs entered into a five-year Independent Marketing and Exclusive Licensee Agreement ("License Agreement") with VIP Wireless, Inc. ("VIP Wireless"), under which Plaintiffs would sell VIP Wireless designated communications services and telephones to the retail public.[2] Paragraph 9 of the License Agreement provides that VIP

---

[1]      Document No. 15.

[2]      Amended Complaint [Document No. 10] at 2-3.

1

Wireless "may immediately terminate [the License Agreement] if [VIP Wireless] determines that [Plaintiffs have] engaged in...fraud or any other illegal activity or activity that is harmful to [VIP Wireless]."[3] Shortly after signing the Licensing Agreement, Plaintiffs leased a VIP Wireless Retail Store in Feasterville, Pennsylvania ("VIP Wireless Feasterville").[4]

In October 2008, Defendant Sprint entered into an Authorized Representative Agreement ("AR Agreement") with VIP Wireless, which permitted VIP Wireless to sell Sprint products and services, and to subcontract a portion of its telecommunications sales obligations.[5] Paragraph 17 of the AR Agreement contains a dispute resolution clause, which requires that all disputes arising out of or in connection with the agreement be resolved in accordance with specific dispute resolution procedures outlined in "Exhibit E - Dispute Resolution" of the AR Agreement.[6] Exhibit E provides that the parties to the AR Agreement waive the right to litigate their contract disputes in court and mandates that such disputes must first be submitted to mediation, and if mediation fails, then to binding arbitration.[7]

After the AR Agreement was executed, Plaintiffs, Sprint, and VIP Wireless entered into a Subcontractor Consent Agreement ("Subcontractor Agreement"), which granted Plaintiffs the right to sell Sprint telecommunications services pursuant to the terms and conditions of the AR Agreement at its VIP Wireless Feasterville store.[8] Paragraph 2 of the Subcontractor Agreement

---

[3] Id. at 3.

[4] Id.

[5] Id. at 4-5.

[6] Defs.' Mot. to Dismiss the Amended Complaint, Ex. A.

[7] Id.

[8] Amended Complaint at 5-7.

provides that: "Subcontractor acknowledges and agrees that it is bound by the terms and conditions of the AR Agreement."[9]

On January 15, 2009, a Sprint employee sent two internal emails to VIP Wireless employees, with the subject line "Outbound Customer Calls - VIP Wireless (Feasterville) 2237", regarding Plaintiffs' submission of potentially improper or fraudulent reimbursement vouchers to Sprint.[10] On March 2, 2009, VIP Wireless terminated its Subcontractor Agreement with Plaintiffs pursuant to Paragraph 9.3 of the License Agreement. As a result, Plaintiffs had to immediately cease operation of the VIP Wireless Feasterville store and they went out of business shortly thereafter.[11]

On April 28, 2009, Plaintiffs filed the instant action as a five-count Complaint, seeking damages allegedly incurred from the loss of their business as a result of the termination of their subcontract.[12] On July 15, 2009, Plaintiffs filed an Amended Complaint. On July 29, 2009, Defendants filed the instant Motion, requesting the Court to dismiss Plaintiffs' Amended Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), on grounds that a superceding mandatory arbitration agreement exists between the parties. In the alternative, Defendants' Motion seeks dismissal of Counts I, II, IV, and V of the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[13]

---

[9] Defs.' Mot. to Dismiss the Amended Complaint, Ex. B.

[10] Amended Complaint at 7-8.

[11] Id. at 10-11.

[12] See also, Compl. [Document No. 1].

[13] Plaintiffs have notified the Court that they voluntarily dismiss their claims for negligent and intentional misrepresentation as pled in Counts IV and V. See Pls.' Mem. of Law in Opp. to Defs.' Mot. to Dismiss Pls.' Amended Compl. [Document No. 17] at 14.

3

The Court has carefully reviewed Defendants' Motion to Dismiss the Amended Complaint, Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss Plaintiffs' Amended Complaint[14], Defendants' Reply Brief in Support of Motion to Dismiss Amended Complaint[15], Plaintiffs' Sur-Reply Brief in Opposition to Defendants' Motion to Dismiss Amended Complaint[16], and all accompanying materials, and this matter is now ready for disposition.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows a party to move for dismissal of any claim for which the district court lacks subject matter jurisdiction.[17] When considering a 12(b)(1) motion, the court "review[s] only whether the allegations on the face of the complaint, taken as true, allege sufficient facts to invoke the jurisdiction of the district court."[18] When subject matter jurisdiction is challenged by the defendant, the plaintiff bears the burden of persuasion.[19]

Pursuant to 9 U.S.C. § 3, a court may stay litigation of an action that is subject to a written arbitration agreement.[20] In actions where all of the issues are arbitrable, it is appropriate

---

[14] Document No. 17.

[15] Document No. 20.

[16] Document No. 23.

[17] FED. R. CIV. P. 12(b)(1) (West 2009 Revised).

[18] Licata v. U.S. Postal Serv., 33 F.3d 259, 260 (3d Cir. 1994).

[19] See Kehr Packages v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991).

[20] 9 U.S.C. § 3 (1990).

for a court to dismiss the complaint, rather than stay the proceedings.[21] The court must consider: (1) whether the parties entered into a valid agreement to arbitrate; and (2) whether the plaintiff's claims fall with the substantive scope of the arbitration agreement.[22]

## III. DISCUSSION

The FAA creates substantive federal law regarding the enforceability of arbitration agreements.[23] In deciding whether it is appropriate to compel arbitration, the Court may "consider an undisputedly authentic document that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."[24] Here, Defendants submitted the AR Agreement and Subcontract Agreement, neither of which are challenged as to authenticity.

Plaintiffs' Complaint alleges that because they were not provided a copy of the AR Agreement they "never knew or understood, up until after the commencement of this action, that the AR Agreement contained an arbitration clause...[therefore] there was no meeting of the minds [between Plaintiffs and Defendants]" concerning arbitration.[25] The Subcontract Agreement, however, which is two pages in length, unequivocally states in paragraph 2 that the parties agree to be bound to the terms of the AR Agreement. The arbitration clause is contained in the AR Agreement. Plaintiffs' "meeting of the minds" as to alternative dispute resolution was

---

[21] Berkery v. Cross Country Bank, 256 F. Supp. 2d 359, 364 (E.D. Pa. 2003) (in addition to granting a stay and compelling arbitration where required by the Federal Arbitration Act ("FAA"), the court in its discretion may also dismiss the action instead of staying it if all the claims involved in an action are arbitrable); see also, E-Time Sys., Inc. v. Voicestream Wireless Corp., 2002 WL 1917697, *5 (E.D. Pa. Aug. 19, 2002).

[22] Marciano v. MONY Life Ins. Co., 470 F. Supp. 2d. 518, 525 (E.D. Pa. 2007).

[23] See 9 U.S.C. § 2 (1990).

[24] Dykes v. SEPTA, 68 F.3d 1564, 1567 n. 3 (3d Cir. 1995).

[25] Amended Complaint at 6.

5

established when they concluded at-arms-length negotiations of Subcontract Agreement.

Although, Plaintiffs neither requested a copy nor inquired about the AR Agreement during their negotiation and review of the Subcontract Agreement prior to entering into the agreement, absent surprise or hardship to the party against whom the enforcement is sought, failure to read a contract and all of its incorporated provisions cannot justify avoidance, modification, or nullification of the contract or any provision therein.[26] Plaintiffs' only evidence of surprise is their assertion that they never received a copy of the AR Agreement. This assertion is negated by the fact that Plaintiffs' Amended Complaint admits that they executed the Subcontract Agreement and performed in accordance with the terms of the agreement.[27] The incorporated dispute resolution clause defines a dispute as "all controversies, disputes, or claims of every kind and nature arising out of or in connection with the negotiation, construction, validity, interpretation, performance, enforcement, operation, breach, continuation or termination of this Agreement."[28] Plaintiffs' only evidence of hardship is that they disfavor the arbitration clause generally. Plaintiffs' potential recovery for their alleged damages is not limited by the dispute resolution clause, especially given that the clause allows for mediation and then binding arbitration, if the parties are not able to resolve their disputes early on. Viewing all factual issues

---

[26]  See Standard Bent Glass Corp. v. Glassrobots OY, 333 F.3d 440, 448 (3d Cir. 2003).

[27]  "After the execution of the [Subcontract Agreement], the plaintiffs operated [the VIP Wireless Feasterville store]. Said store bore a "Sprint" sign above the front entrance of the store as well as other indicia contained in or about said store to reflect that the store was a Sprint outlet and subject to the authority of Sprint." Amended Compl. at 6-7.

[28]  Defs.' Mot. to Dismiss the Amended Complaint, Ex. A.

in a light favorable to Plaintiffs, the evidence is insufficient to prove surprise or hardship.[29]

Despite Plaintiffs' argument that they "have sued for various torts committed by Sprint," all of Plaintiffs' claims are based on both the Subcontract Agreement and the AR Agreement, which is incorporated by reference into Paragraph 2 of the Subcontract.[30] Count I (libel), Count II (intentional interference with existing and prospective contractual relations), and Count III (breach of contract), all fall arise out of their operation of the VIP Wireless retail store and submission of certain reimbursement vouchers in connection with Plaintiffs' operation of its store. As pled, Plaintiffs claims would not have arisen were it not for the parties' contractual relationship.

Defendants request, in the alternative, that the Court dismiss Counts I, II, IV, and V of the Amended Complaint for Plaintiffs' alleged failure to state a claim upon which relief can be granted.[31] As the Court finds that the parties are compelled to arbitrate all issues pled in the Amended Complaint, the Court need not address Defendants' 12(b)(6) motion.

## IV. CONCLUSION

The Court finds that the parties entered into a valid agreement to arbitrate and Plaintiffs' claims fall with the substantive scope of that agreement and its incorporated dispute resolution

---

[29] While Plaintiffs state in their Complaint that "it appears that the defendants and/or their agents consciously and deliberately withheld knowledge of the existence of the arbitration clause in the AR Agreement from the plaintiffs", Plaintiffs did not plead any facts to sufficiently plead the elements of fraud. It is well settled that the term "fraud" requires a misrepresentation of a material fact and in accordance with FRCP 9, must be pled with particularity. See FED. R. CIV. P. 9(b) (West 2009 Revised); See also U.S. v. Omer, 127 S.Ct. 1118 (2007); Bell Atlantic Corp. v. Twombly, 550 U.S. at 562 (quoting Car Carriers v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir. 1984) (a complaint "'must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory'").

[30] See Amended Complaint at 4-6.

[31] As noted supra at n.13, Plaintiffs voluntarily dismissed Counts IV and V of the Amended Complaint .

7

provisions.  As such, the Court will dismiss the Amended Complaint pursuant to 12(b)(1) for lack of jurisdiction.

An appropriate order follows.